UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

LIZA C. ARIZA,
                        Plaintiff,

                                                        CIVIL ACTION

                                                        No. 3:13-00419-JWD-EWD
VERSUS

LOOMIS ARMORED US, LLC,
                        Defendant.

**ORDER ON MOTIONS *IN LIMINE***

**I.    INTRODUCTION**

Before the Court are five motions *in limine*: Plaintiff's First Motion *in Limine*-To Admit Evdience but with Adverse Inference ("Inference Motion"), (Doc. 133); Plaintiff's Second Motion *in Limine*-Bad Acts ("Bad Acts Motion"), (Doc. 134); Plaintiff's Third Motion *in Limine*-Exhibits Never Produced during Discovery ("Exhibits Motion"), (Doc. 135); Plaintiff's Fourth Motion *in Limine*-Withdrawn Claim ("Withdrawal Motion"), (Doc. 136); and Defendant's omnibus Motion in Limine ("Defendant's Motion"), objecting to eleven exhibits proposed by Plaintiff, (Doc. 150). Each of these five motions has engendered a response by the opposing party. (Docs. 160–63, 165.) For the reasons more fully explained below, and subject to the Parties' ability to later satisfy the requirements set in the Federal Rules of Evidence[1] as to certain objections predicated on, among other matters, a lack of foundation, this Court DENIES

---

[1] In this order, any and all reference to "Rule []" or "Rules" are to the Federal Rules of Evidence unless otherwise noted.

the Inference and Exhibits Motions, GRANTS the Bad Acts and Withdrawal Motions, and GRANTS IN PART and DENIES IN PART the Defendant's Motion.

## II.     DISCUSSION

### A.     STANDARD

Entirely discretionary, Rule 403 allows a court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403. According to the relevant advisory committee, "'[u]nfair prejudice' within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." FED. R. EVID. 403 advisory committee note. As case law further explains, "evidence is prejudicial [for purposes of Rule 403] only when it tends to have some adverse effect upon accused beyond proof of fact or issue that justified its admission into evidence, by proving some adverse fact not in issue or exciting emotions against accused." *United States v. Figueroa*, 618 F.2d 934, 943 (2d Cir. 1980). Rule 404, in turn, renders "[e]vidence of a person's character or character trait . . . not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." FED. R. EVID. 404(a)(1). Three exceptions, encoded in Rules 606, 607, and 608 and covering impeachment, exist. FED. R. EVID. 404(a)(3). Seemingly, "[t]he rationale behind this rule is the notion that this evidence has slight probative value but has a tendency to be highly prejudicial or to confuse the issues." *Cohn v. Papke*, 655 F.2d 191, 194 (9th Cir. 1981) (relying on *Reyes v. Mo. Pac. R.R.*, 589 F.2d 791, 793 (5th Cir. 1979)).

As Defendant rightly notes, (*See, e.g.*, Doc. 160 at 1; Doc. 161 at 1; Doc. 162 at 1),[2] motions *in limine* are generally disfavored, *see, e.g.*, *United States v. Dish Network, L.L.C.*, No. 09-3073, 2015 U.S. Dist. LEXIS 17055, at *5 (C.D. Ill. Nov. 30, 2015); *United States v. Amor*, No. 14-20750-CR-LENARD/GOODMAN, 2015 U.S. Dist. LEXIS 144291, at *3, 2015 WL 6438479, at *1 (S.D. Fla. Oct. 23, 2015); *Mahmoud v. Rambosk*, No. 2:13-cv-63-FtM-38DNF, 2014 U.S. Dist. LEXIS 98700, at *3, 2014 WL 3593763, at *1 (M.D. Fla. July 21, 2014); *Mi-Jack Prods. v. Intl. Union of Operating Engrs., Loc. 150*, No. 94 C 6676, 1995 U.S. Dist. LEXIS 16930, 1995 WL 680214 at *1 (N.D. Ill. Nov. 14, 1995). Instead, "[b]y deferring evidentiary rulings until trial, courts can properly resolve questions of foundation, relevancy, and prejudice." *Telewizja Polska USA, Inc. v. Echostar Satellite Corp.*, No. 02 C 3293, 2005 U.S. Dist. LEXIS 4502, at *3, 2005 WL 289967, at *1 (N. D. Ill. 2005). Such a result aligns with the Rules' broad tenor: "In fairness to the parties and their ability to put on their case, a court should exclude evidence in limine only when it is clearly inadmissible on **all** potential ground." *United States v. Gonzalez*, 718 F. Supp. 2d 1341, 1345 (S.D. Fla. 2010) (emphasis added); *cf. Luce v. United States*, 469 U.S. 38, 41, 105 S. Ct. 460, 463, 83 L. Ed. 2d 443 (1984) (emphasizing how a "court must know the precise nature of . . . testimony" in performing the balancing required under Rule 609(a)(1)).

**B.    APPLICATION**

**1.    Inference Motion: Defendant Exhibits 3 and 4**

The Inference Motion asks that this Court admit two exhibits allegedly not provided during discovery and now submitted by Defendant, but to do so with "an adverse inference . . .

---

[2] Having repeatedly asserted this proposition in these three documents, this Court is puzzled as to why Defendant then proceeds to make many technical objections in its own motion *in limine*. (*Compare* Doc. 150, *with* Doc. 160 at 1; Doc. 161 at 1; Doc. 162 at 1.) Based on a venerable aphorism alone—what is good for the goose is good for the gander—the Court would be tempted to deny its motion. Of course, out of fairness, it will weigh its merits carefully.

that defendant continues to fail to provide documents in violation of the Court's orders." (Doc. 133-1 at 1.) Plaintiff's entire case for this instructions rests upon Loomis' alleged failure to provide two now non-privileged letters, presently set to be introduced as Defendant Exhibits 3 and 4: "The two new exhibits prove[] that Loomis earlier failed to comply with the Court's orders to produce all non-privileged correspondence made between the dates of Ariza's query and Loomis'[] effective termination date." (*Id.* at 3.) To this contention, Plaintiff returns, (*Id.* at 4), and hazards "a guess" at what other documents not provided, but seemingly deliberately withheld, would show: "a shame that blames Loomis'[] failure to return Ariza to work on Ariza failing to get medical information the company doctor ostensible wants," (*Id.* at 5.) In response, Defendant makes a single point: the exhibits upon which Plaintiff so heavily relies had been properly and previously withheld pursuant to the attorney-client privilege, Defendant having provided the requisite log, and recently released due to Defendant's voluntary waiver of the privilege "in order to show the complete dialogue at issue." (Doc. 160 at 1–2.) To wit, to the extent these two exhibits were once withheld, they were done so in accordance with the Federal Rules of Civil Procedure. (*Id.*)

      This Court agrees with Defendant. Under Federal Rule of Civil Procedure 26(b)(1), it had no obligation to provide Plaintiff with materials encompassed by the attorney-client privilege; arguably, on their client's behalf, its lawyers had the duty not to do so. FED. R. CIV. P. 26(b)(1). The fact that a motion to compel was granted as to some material, but not all, and that this shield was waived as to other does not mean that the material was withheld with a culpable state of mind (or bad faith), as the adverse inference instruction that Plaintiff seeks requires as a matter of law. *See, e.g.*, *Beaven v. U.S. Dep't of Justice*, 622 F.3d 540, 553 (6th Cir. 2010) (quoting *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002)); United

States v. Smith, 534 F.3d 1211, 1223–24 (10th Cir. 2008). Essentially, Plaintiff seeks to make the decision to assert the attorney-client privilege, which often, if not invariably, shields relevant evidence, as equivalent to spoliation and as proof that evidence, its existence unestablished, not provided would "prove" her case. Declining to thereby expand the limited reach of this doctrine and curtail a longstanding common law right, **this Court denies the Inference Motion**.

**2.     Bad Acts Motion**

In the Bad Acts Motion,[3] Plaintiff asks this Court to bar Defendant from either introducing or mentioning evidence about her illegal sale of pain-prescription medication and text messages hinting at her post-termination shoplifting. (Doc. 134-1 at 1.) Noting that it obtained the evidence "legitimately," "[t]he point," according to Defendant, "is that [P]laintiff does not deny any of these bad actions," and that they are relevant, each going "to her credibility and her modus operandi to make false claims for financial gain." (*Id.* at 2.) In Defendant's words, "[a]ll of th[e] information is probative as the case is based on plaintiff's credibility." (*Id.* at 3.)

The Court disagrees with Defendant. The issue before the jury will be whether Plaintiff has made the prima facie case of discrimination by Defendant in violation of the Americans with Disabilities Act, as amended in 2008 ("ADA"). Irrelevant evidence must be excluded, FED. R. EVID. 402, but even relevant evidence may be excluded if the relevance is minimal and the risk of unfair prejudice is far too high, *Id.* Whatever the legality and reality of Plaintiff's "bad acts," not one bears on whether or not she suffered cognizable and illegal discrimination when terminated; that she may have sold her pills or stolen a dress matters not a bit if she can prove her

---

[3] Inexplicably, Plaintiff makes this same argument in the Withdrawal Motion, (Doc. 136-1 at 2–5), as Defendant later notes, (Doc. 163 at 2).

ADA case. Meanwhile, their automatic introduction raises the risk that the jury will read evidence directly relevant to the case at hand via the prism of distinguishable acts. Whether a party or not, a witness' credibility, of course, is a fair subject for impeachment, assuming it is not impeachment on a collateral issue. FED. R. EVID. 607. Yet, that fact does not make impeachment evidence admissible as an initial matter. Indeed, the strict system erected by the Federal Rules of Evidence for the admission of prior bad acts underscores the delicacy with which such evidence should be treated. *See* FED. R. EVID. 609. Otherwise, every plaintiff would be subject to attack based on post-incident bad acts, a position inconsistent with precedent's overwhelming weight, even if Defendant truly believes that a plaintiff's credibility is always at issue.[4] For this reason, **this Court grants the Bad Acts Motion**.

3.     **Exhibits Motion**

In this third motion, Plaintiff requests that this Court bar Defendant from "introduc[ing] evidence that it had [allegedly] not provided in discovery." (Doc. 135-1 at 1.) Three exhibits are specified: Exhibit 50, 51, and 52. (*Id.*) However, later in the motion, Plaintiff seemingly adduces a new reason: as the exhibits "address company policy," and as Defendant's expert "did not use any of the exhibits in making their opinions," "[i]t is feared that if the exhibits are admitted at trial, it would risk admitting that the expert's opinion was not [sic] based on these trial exhibits." (*Id.* at 2.) Such a result would be "unfair . . . since the expert did not even have the evidence when he prepared his opinion." (*Id.*) Seemingly, therefore, Plaintiff raises two objections to these exhibits: (1) they had not been previously provided, and (2) their introduction may imply the

---

[4] By that logic, so is any defendant's, and any incident in which Loomis was accused of discrimination (or worse) would be relevant and admissible as a matter of law. The Court, however, presumes Defendant would object to such evidence's admission.

expert relied upon these exhibits in making his determination. In response, Defendant insists the exhibits were actually provided with the relevant expert report. (Doc. 162 at 1–2.)

This Court declines to strike these exhibits for three reasons. First, two of the three documents—Exhibits 51 and 52—are manuals setting forth the requirements of various positions with Loomis, and they are thus self-evidently relevant to ascertaining, as a jury will have to do, the extent to which Plaintiff was able to perform her job's essential functions or adhered to the requisite procedures. With its relevance so clear, the Court is not inclined to foreclose admission of these objective and un-prejudicial documents over whose authenticity Plaintiff has raised no credible doubt. Indeed, this result seems especially proper in light of Defendant's claim, not yet controverted, that the materials were actually disclosed during discovery. Second, Exhibit 50 once constituted part of the expert reported received by Plaintiff on June 16, 2014, (*Id.* at 2), and Plaintiff has thus had possession of it since the summer of 2014. Neither surprise nor unfair prejudice can materialize when plaintiff's counsel has had more than six months to review the exhibit—and prepare questions about its methodology and conclusions. Finally, whatever dangers may be threatened by these exhibits' introduction can be easily mitigated by an order or on cross-examination. To show Defendant's expert did not rely upon them requires no more than a line of questioning and, eventually, a credibility determination by the appropriate factfinder: the jury, not this Court. The risk of confusion, then, seems rather minimal, easily reducible without the sacrifice of evidence that is more than tangentially relevant. As such, **this Court denies the Exhibits Motion**.

4.  **Withdrawal Motion**

The Withdrawal Motion advances a single request: "[A]n order excluding any and all evidence, references to evidence, testimony, or argument relating to the sexual harassment

charges filed and withdrawn by Ms. Ariza[,] all of which are wholly unrelated to the subject matter of this litigation." (Doc. 136 at 1.) Echoing its earlier motion, (Doc. 134-1 at 2), Defendant points out a crucial fact—this claim was not withdrawn but dismissed by this Court—and stresses the harassment claims, though dismissed, is relevant for what it intimates: "As testimony will reveal during the trial, this is part of plaintiff's modus operandi to pursue meritless claims for her own personal financial gain." (*Id.* at 2.)

For the same reason that this Court granted the Bad Acts Motion, it will grant this fourth motion in limine. The sexual harassment claim, disposed of pursuant to Rule 56, has no bearing on the immediate cause of action. It can only conflate the precise issues before the jury soon to be empaneled, thereby either confusing them unnecessarily or inviting them to ignore directly relevant evidence on the basis of a wholly separate claim's failure. The prejudice that may follow—a jury findings little merit in a party's case on the basis of its failure to succeed on another claim—is simply too great when the relevance appears so miniscule. Accordingly, **this Court grants the Withdrawal Motion**.

5.     **Defendant's Motion**

In one motion, Defendant attempts to strike at eleven different exhibits proposed by Plaintiff. (Doc. 150.) It objects to seven exhibits on hearsay alone: Exhibit 2, "text messages between Patrick LaFolette and Liza Ariza"; Exhibits 7, 8, 9, which contain return to work documents signed by three different doctors; Exhibit 11, an email thread featuring Ms. Stacey Robinson; Exhibit 22, an expert report by Mr. Jim McGuffey; and Exhibit 30, a letter from American Occupational Health Care. (*Id.* at 1–2.) It objects to Exhibit 12, an email sent by Plaintiff "stating the amount of money in the vault," as "irrelevant, not calculated to lead to admissible evidence at trial and is confidential information and is a privileged business record."

(*Id.* at 2.) Lastly, it damns three exhibits as "inaccurate": Exhibit 18, a job description of the Vault Supervisor position held by Plaintiff prior to her termination; Exhibit 33, "demonstrative exhibit showing the dates and efforts to provide Loomis with medical information"; and Exhibit 34, "demonstrative exhibit of timeline of events in case." (*Id.* at 2; *see also* Doc. 150-1.)

a.      *Objections to Exhibits 2, 6, 7, 8, 11, 22, and 30*

As to Defendant's multiple hearsay objections, this Court grants them, subject to the caveat that Plaintiff may still lay down a proper foundation in the midst of trial.

Exhibit 2, containing a series of text messages between Plaintiff and a former coworker, is not being introduced, as Plaintiff contends, to simply hint at the latter's fearful reaction to Plaintiff's spell of June 5, 2012. (Doc. 165 at 3–4.) It is quite clearly being introduced so as to imply that Plaintiff suffered a seizure or epilepsy, an element of Plaintiff's prima facie case and a fact which she must still prove. Indeed, Plaintiff acknowledges as much in defending this exhibit: "If they were just fainting spells, however, it would not have caused the response . . . [Plaintiff's colleague] experienced." (*Id.* at 4.) Even if Plaintiff's artful distinction was colorable, the risk that the jury may fail to make it, effectively treating this email exchange as proof that Plaintiff did not just suffer a fainting spell, is too great to permit its inclusion pursuant to Rule 403. Unless employee testifies, this objection will be sustained.

Exhibits 11 and 22 consist of an email and an expert report involving witnesses who are scheduled to testify at trial. Thus, like Exhibit 2, a witness will verify and testify to their contents, and a foundation will likely be articulated when necessary. Hence, unless the relevant persons testify, this objection will be sustained.

Exhibits 7, 8, and 9 consist of three doctors' notes.[5] While Plaintiff attempts to defend them as regular business records, (*Id.* at 3), they do not bear that clear imprimatur. Notes scratched on a pad by a doctor or an email written at a patient's request are not the kind of official records to which Rule 803(6) applies, for they are too informal and too unique to the individual to be classified as records of a regular business activity. However, according to Plaintiff, a foundation may still be laid as to Exhibits 6 and 8, as the doctors who drafted those notes are scheduled to testify. Assuming the proper foundation is then established, Defendant's hearsay objection will have no merit, and it will be overruled. In contrast, Exhibit 7 was written by a doctor who will not testify, and as this Court will not treat a simple handwritten note as an official business record, the hearsay objection will be sustained unless a proper foundation is poured. The same principles extends to Exhibit 30, a letter written by a presently non-testifying doctor.

In sum, **this Court grants Defendant's objections to Exhibits 2, 6, 7, 8, 11, 22, and 30, subject to Plaintiff setting down the proper foundation at trial.[6]**

---

[5] This Court finds Defendant's other objections—that the records are incomplete and therefore inaccurate or prejudicial—as without merit. The Defendant remains able, as Plaintiff concedes, (Doc. 165 at 4), and as their own exhibits suggest, to augment Plaintiff's selective medical disclosures. Because it can do so and thus obviate the very bases of its objections—indeed, because it already plans to do so—this Court denies this objection.

[6] In this regard, this Court notes that a certified copy of Plaintiff's medical records would be admissible under Louisiana law (and, by association, the Rules) and *prima facie* evidence of its contents. LA. R.S. § 13:3714(A); *see also, e.g.*, *State v. Yates*, 574 So. 2d 566, 568 (La. Ct. App. 1991). In effect, the Rules, buttressed by Louisiana law, render such medical records sufficiently relevant to be admitted in this federal court. *Cf., e.g.*, *Daigle v. Parish of Jefferson*, 08-1310 (LA. App. 5 Cir. 12/08/09); 30 So. 3d 55, 65 (holding that "certified hospital records are admissible into evidence without the laying of any foundation beyond a showing of certification" and finding them relevant). Thus, if Plaintiff is able to later show that these three exhibits are part of a certified medical record, this ruling will be revisited.

b.      *Objection to Exhibit 12*

The bases of Defendant's objection are too flimsy to sustain this exhibit's exclusion. The exhibit is but an email stating the amount of money in Defendant's vault at a certain date and time. Arguably, as only a jury can decide, such information is relevant to showing that Loomis considered Plaintiff to be a valuable and competent employee, or at the very least the nature of her responsibilities as a vault supervisor. It offends no cognizable federal privilege, such rules already narrowly circumscribed, and Defendant has not adduced a single case recognizing an applicable fiduciary privilege. (*See* Doc. 150-1.) To claim it so, does not make it true, especially when courts are commanded to construe all privileges both tightly and narrowly. **This Court overrules Defendant's objection to Exhibit 12**.

c.      *Objection to Exhibits 18, 33, and 34*

Its objections based on these exhibits alleged inaccuracy, Exhibits 33 and 34 constitute two different timelines of events relevant to this proceeding, and Exhibit 18 is a description of the vault supervisor position which apparently came from Defendant as part of a discovery response. (Doc. 165 at 7–8, 9–10.) In essence, these objections reflect the Parties' inability to agree on even basic facts, ones whose veracity this Court is loath to prejudge. Nonetheless, as Exhibit 18 contains purely an objective description of Plaintiff's former position and as Exhibit 33 includes simply a list of dates upon which relevant events occurred, dates which can be confirmed by perusing Defendant's own filings in this proceeding, Defendant's objections are overruled. If it wishes to impugn these exhibits accuracy before the jury, it may freely do so within the constraints imposed by the Rules. For now, however, **this Court overrules Defendant's objections to Exhibits 18 and 33**.

Exhibit 34, however, presents an obvious problem under the Rules: unlike Exhibit 33, it specifically includes loaded terms and expressions regarding critical elements of her case that Plaintiff must still prove. Thus, it reads: "Seizure 6/5/2012," "Physician Oks RTW 7/27/12," "Surgeon OKs RTW," and "Ariza: why delay in return to work? 9/12/2012." Defendant, obviously, denies that Plaintiff has ever suffered a seizure; the question appended is not a statement of incontrovertible fact; and Defendant intends to contend that the "RTW" ("Return to work") statements did not reflect their authors' true opinion via these men's own courtroom testimony. In other words, the timeline in Exhibit 34 depicts as facts allegations not yet proven and whose accuracy is thus fairly in doubt at this time. Accordingly, **this Court grants Defendant's objection to Exhibit 34.**

III.   CONCLUSION

For the foregoing reasons and subject to the exceptions stated therein, this Court DENIES the Inference and Exhibits Motions, GRANTS the Bad Acts and Withdrawal Motions, and GRANTS IN PART and DENIES IN PART the Defendant's Motion.

Signed in Baton Rouge, Louisiana, on <u>January 22, 2016</u>.

**JUDGE JOHN W. deGRAVELLES
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**